UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JESSE CLUBB**,

                  Plaintiff,

v.                                                                  Case No. 20-CV-1683

**MARINETTE COUNTY**, *et al.*,

                  Defendants.

---

**DEFENDANTS ADVANCED CORRECTIONAL HEALTHCARE, INC.
AND ASHLEY CROMELL'S BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

---

Defendants Advanced Correctional Healthcare, Inc. (hereinafter "ACH") and Ashley Cromell f/k/a Eland, by and through their counsel, Leib Knott Gaynor LLC, respectfully submit this Brief in Support of their Motion for Summary Judgment.

## FACTS

At all material times, plaintiff was an inmate at the Marinette County Jail. (ECF No. 1 ¶ 5). On September 13, 2018, plaintiff alleges that while eating a meal, he bit down on a piece of plastic in his food, causing an injury to one tooth. (*Id.* at ¶ 27). The next day, he filed an Inmate Grievance Form stating he broke his tooth. (*Id.* at ¶ 30; ECF No. 1-2 at 8, Pl.'s Compl. Ex. 2). The Inmate Grievance Form was received by the County and plaintiff was given a "nurse form" the same day. (ECF No. 1-2 at 8, Pl.'s Compl. Ex. 2). It was then not until September 24 that plaintiff submitted the County Jail Sick Call Request indicating he had injured a tooth. (ECF No. 1-2 at 11, Pl.'s Compl. Ex. 3). The same day, plaintiff was seen by Nurse Cromell. (ECF No. 1-2 at 10-11, Pl.'s Compl. Ex. 3). It was noted that plaintiff's "general condition of teeth" was "very poor". (ECF No. 1-2 at 10, Pl.'s Compl. Ex. 3). Nurse Cromell was unable to determine whether the

condition was acute or chronic. (*Id*.). She consulted the on-call physician, Dr. Schamber, who prescribed Tylenol and instructed that plaintiff should avoid hard foods. (*Id*.).

Plaintiff's condition did not improve and on September 27 he submitted another County Jail Sick Call Request, which was received by Nurse Swanson the following day. (Knott Decl. ¶ 3, Ex. A, ACH 10). He was prescribed more Tylenol and referred to Jail Administration to schedule an appointment with a dentist. (*Id*.). He submitted another County Jail Sick Call Request on October 9 stating, "about my teeth again & The [sic] meds that were changed". (Knott Decl. ¶ 3, Ex. A, ACH 11). On October 11 he was instructed by Nurse Swanson that there was no change in his meds, and he would need to contact Jail Administration for further dental complaints. (*Id*.).

He was seen by an outside dentist on October 19 and prescribed Clindamycin. (Knott Decl. ¶ 3, Ex. A, ACH 17). The dentist noted his remaining teeth were "all grossly decayed" (Knott Decl. ¶ 3, Ex. A, MOV 4). In addition to tooth #22, which was alleged to be injured by the piece of plastic in his food, plaintiff's #23 and #24 teeth were "non-restorable". (Knott Decl. ¶ 3, Ex. A, MOV 4). A follow-up appointment was scheduled for October 25, at which time these three teeth were extracted. (Knott Decl. ¶ 3, Ex. A, ACH 2). When he returned to the Jail, he was seen by a nurse, who completed another Dental Progress Note. (Knott Decl. ¶ 3, Ex. A (ACH 15)). Plaintiff was instructed to "refrain from chewing on left side To [sic] prevent food particles at [sic] healing of extractions." (*Id*.).

On October 29 he submitted a County Jail Sick Call Request complaining he still had pieces of teeth where the extraction occurred, and they were causing him pain. (Knott Decl. ¶ 3, Ex. A, ACH 8). The next day a call was placed to the outside dentist and another appointment was scheduled for October 31. (*Id*.). At his appointment, the dentist noted "[b]one spurs erupting to

surface, sockets full of debris and granulation tissue." (Knott Decl. ¶ 3, Ex. A, ACH 3, MOV 4). The remaining bone spurs were then removed. (Knott Decl. ¶ 3, Ex. A, ACH 3).

Plaintiff claims "[b]ut for the delay in providing medical treatment to Clubb, his teeth would not have required retraction and removal." (ECF No. 1 ¶ 41). ACH previously moved for partial dismissal of the claims against it. (ECF No. 28). In response, plaintiff stipulated to dismissal of County 1 against ACH without prejudice and to dismissal of Count 4 against ACH with prejudice. (ECF No. 33). The claims remaining against ACH and Nurse Cromell are Count 2 – Failure to Train and Supervise, Count 3 – Negligence, and Count 5 – Municipal (*Monell*) Liability. (ECF Nos. 1, 39). Plaintiff is not able to prove any of his claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when the evidence requires a fact finder to resolve the parties' differing versions of the truth at trial. *Id.* at 249. Further, a factual dispute is genuine only if a reasonable jury could find for either party. *Stokes v. Bd. of Educ.*, 599 F.3d 617, 619 (7th Cir. 2010); *Kuhn v. Goodlow*, 678 F.3d 552, 555 (7th Cir. 2012). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Id.* at 247-48 (emphasis in original).

The Supreme Court has explained:

> the plain language of Rule 56(c) mandates the entry of summary judgment, after
> adequate time for discovery and upon motion, against a party who fails to make a

3

showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, the burden on the party moving for summary judgment is not to show the "absence of a genuine issue of material fact," but rather to show "that there is an absence of evidence to support the non-moving party's case." *Id*. at 325.

Once a motion for summary judgment has been made and properly supported, the non-movant has the burden of setting forth specific facts showing the existence of a genuine issue of material fact for trial. *Id.* A plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts;" they must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the non-movant must present definite, competent evidence in rebuttal. *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 996 (7th Cir. 2002). "[B]efore a non-movant can benefit from a favorable view of the evidence, it must show that there is some genuine evidentiary dispute." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).

## ARGUMENT

Plaintiff failed to conduct any discovery to support his claims prior to the discovery deadline. Discovery was to be completed by November 1, 2021. (ECF No. 41 ¶ 4). There have been no depositions taken of any defendants, and plaintiff has failed to obtain the required expert testimony to prove his claims.

### I. PLAINTIFF CANNOT PROVE FAILURE TO TRAIN CLAIM

Plaintiff purports in Count 2 of the Complaint to state a claim under "Wis. Stat. § 1983" against "County, Department and Sauve" for alleged negligent failure to train and supervise certain

employees. (ECF No. 1 ¶¶ 55 et seq.). It is not clear what plaintiff intends to allege and against whom. While ACH and medical staff are not identified as targets of the cause of action in the initial description of the count, plaintiff references ACH in the allegations.[1] (*Id.* at ¶¶ 58-60). Plaintiff has failed to amend his pleadings or identify the John Doe parties over two-and-one-half years after filing his Complaint and that is a sufficient ground for dismissing these parties. (*See* ECF No. 1; *Collette v. Litscher*, Case No. 04-C-164-C, 2004 U.S. Dist. LEXIS 6808, * 3 (W.D. Wis. April 19, 2004)( "Plaintiff's failure to make a diligent effort to learn who the Doe defendants are so that they could be served with plaintiff's complaint is a sufficient ground alone for dismissing plaintiff's claims against the Doe defendants."). The claim alleged, however, is nonetheless deficient and cannot be proven.

A failure to train and supervise claim is analyzed under the deliberate indifference standard. *Holmes v. Sheahan*, 930 F.2d 1196, 1200 (7th Cir. 1991). "In making failure-to-train claims, plaintiffs must establish that a municipality's training program is inadequate, and that 'such inadequate training can justifiably be said to represent city policy'". *Id.*; *quoting Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1988).

> A particular [nurse]'s unsatisfactory training cannot alone suffice to attach liability to the state. . . Nor can plaintiffs prevail merely by proving that an accident or injury could have been avoided had an officer received enhanced training forestalling the particular conduct resulting in the injury. . . This is why claims alleging a constitutional deprivation due to failure to provide training to employees are cognizable under § 1983, and yield liability, only if that defendant's failure to train demonstrates its "deliberate indifference" to the constitutional rights of its [inmates].

---

[1] Plaintiff alleges unnamed "John Does 1-10, Doctors 1-10 and Nurses 1-10" were "negligent and derelict in their duties and responsibilities." (ECF No. 1 ¶ 56). Plaintiff fails to state a cause of action and cannot prove his claims against unnamed and to-date unidentified defendants, nor have such unnamed defendants received service of process. Plaintiff's claims against John Doe defendants should be dismissed.

5

*Erwin v. County of Manitowoc*, 872 F.2d 1292, 1298 (7th Cir. 1989). Therefore, plaintiff must show ACH employees "acted with the requisite culpable state of mind." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). "Evidence that the official acted negligently is insufficient to prove deliberate indifference. Rather, 'deliberate indifference' is simply a synonym for intentional or reckless conduct, and that 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Id*.

Plaintiff claims only that ACH employees were negligent in providing him treatment and that ACH was negligent in failing "to hire and supervise properly trained personnel to provide adequate and appropriate medical care to inmates at the Jail, including Clubb." (ECF No. 1 ¶¶ 55-60). By plaintiff's own admission, ACH and its employees were not deliberately indifferent and any alleged claim under 42 U.S.C. § 1983 against ACH or an employee must be dismissed.

Additionally, plaintiff cannot prove on the merits that ACH or its employees were deliberately indifferent. He has not conducted any depositions or presented any evidence of ACH's training program for its employees. Discovery has long closed, and plaintiff is unable to attempt to save his claim that ACH acted with deliberate indifference. To the extent that any negligence against ACH was stated in Count 2, it should be dismissed pursuant to the arguments below.

## II. PLAINTIFF CANNOT PROVE NEGLIGENCE CLAIM

Plaintiff's Count 3 alleges negligence against all remaining defendants. (ECF No. 1 ¶¶ 61 et seq.). Plaintiff claims ACH and Nurse Cromell owed him a duty of care and breached that duty "by failing to provide him adequate medical care with regards to his injuries, and especially with regards to the injuries to his teeth." (ECF No. 1 ¶ 63). Like all negligence claims, the plaintiff must prove (1) a breach of (2) a duty owed (3) that resulted in (4) his injury. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (2001). Negligence in the medical context is the failure

6

of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis.2d 124, 149, 595 N.W.2d 423, 435 (1999); *Schuster v. Altenberg*, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161-62 (1988). "[A] claim for medical malpractice requires a negligent act or omission that causes an injury." *Skemp*, 2001 WI 42 at ¶ 17.

It has long been recognized by the Wisconsin Supreme Court that expert testimony must be adduced concerning matters, particularly in medical malpractice actions, involving special knowledge, skill, or experience on subjects which are not within the realm of the ordinary experience of mankind. *Christianson v. Downs*, 90 Wis. 2d 332, 338-39, 279 N.W.2d 918 (1979); *Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 150, 172 N.W.2d 427 (1969). "Unless the situation is one where the common knowledge of laymen affords a basis for finding negligence, expert medical testimony is required to establish the degree of care and skill required of a physician." *Christianson*, 90 Wis. 2d at 338. Thus, he must show that ACH and Ms. Cromell "failed to use the required degree of skill exercised by an average respective medical professional, that plaintiff was harmed, and that there is a causal connection between the defendants' failure and plaintiff's harm." *LaBrec v. Syed*, Case No. 19-cv-804-jdp, 2021 U.S. Dist. LEXIS 177566, *5-6 (W.D. Wis. September 16, 2021); Wis. JI—Civil 1023. On summary judgment, it is the plaintiff's burden to show a reasonable jury could find all negligence elements in his favor. *LaBrec*, 2021 U.S. Dist. LEXIS 177566 at *6.

Expert testimony establishing the standard of care is necessary for plaintiff to advance his negligence claim. *Sheahan v. Suliene*, Case No. 12-cv-433-bbc, 2014 U.S. Dist. LEXIS 39000, *23 (W.D. Wis. March 25, 2014) ("With regard to both medical negligence claims, plaintiff has

failed to submit expert testimony establishing the standard of care, which is enough to doom his claims.").

Plaintiff also requires an expert to admit evidence that the claimed negligence caused his injury. Without expert testimony, the issue of causation results in an insufficiency of proof. *Estate of Hegarty v. Beauchaine*, 2006 WI App 248, 297 Wis. 2d 70, 159, 727 N.W.2d 857. Plaintiff must provide medical expert opinions, held to a reasonable medical certainty, to establish causation in a medical malpractice action. *See Ehlinger v. Sipes*, 148 Wis. 2d 260, 268, 434 N.W.2d 825 (Ct. App. 1988) (*citing Treptau v. Behrens Spa, Inc.*, 247 Wis. 438, 444, 20 N.W.2d 108 (1945)); *Zintek v. Perchik*, 163 Wis. 2d 439, 456, 471 N.W.2d 522 (Ct. App. 1991), *overruled on other grounds by Steinberg v. Jensen*, 194 Wis. 2d 439, 534 N.W.2d 361 (1995) (holding that the law "require[s] that an expert give an opinion to a reasonable degree of medical certainty that [the defendant practitioners] were negligent before any question concerning their alleged negligence could be included on the special verdict"); *Riley v. Lawson*, 210 Wis. 2d 478, 492-94, 565 N.W.2d 266 (Ct. App. 1997) (affirming a trial court's finding that the plaintiff's medical malpractice claim was frivolous when her standard-of-care expert "could not state with any medical certainty" that the defendant practitioner breached the standard of care). The Wisconsin Supreme Court has held that, if expert testimony is necessary in a medical malpractice case to establish causation but is absent, a verdict for the plaintiff rests upon speculation and conjecture and must be set aside. *Dettman v. Flannery*, 86 Wis. 2d 728, 745, 273 N.W.2d 348, 355-56 (1979).

Plaintiff was required to disclose his expert witnesses by December 15, 2021, and has failed to do so. (ECF No. 41 ¶ 3). On these facts alone plaintiff's negligence claim must be dismissed; however, in addition, his negligence claims against Nurse Cromell and ACH must also be dismissed on the merits.

### A. The Negligence Claim Against Nurse Cromell Fails

Plaintiff must show that Nurse Cromell "acted negligently and consciously refused to take reasonable steps to provide" plaintiff with appropriate care. *LaBrec*, 2021 U.S. Dist. LEXIS 177566 at *8. "Medical decisions that may be characterized as 'classic examples of matters for medical judgment'" are beyond the scope of a § 1983 claim. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996); *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (*quoting Estelle*, 429 U.S. at 107); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Although the care plaintiff received may not have been entirely to his satisfaction, a prisoner's choice of a physician, a mode of treatment, or a place of treatment is not guaranteed, "nor does it (or could it) guarantee a particular outcome or level of comfort in the face of physical maladies." *Gerald v. Ind. Dep't. of Corr.*, Case No. 1:08-cv-706-DFH-TAB, 2009 U.S. Dist. LEXIS 52936, at *8-9 (S.D. Ind. 2009).

The only reference to Nurse Cromell in plaintiff's Complaint is that she "noted on September 24, 2018, that Clubb had broken teeth based on her observation." (ECF No. 1 ¶ 32). Along with this reference, plaintiff attached Exhibit 3, the Dental Progress Note and County Jail Sick Call request dated September 24, 2018, to his Complaint. (*Id*.; ECF No. 1-2 at 10-11). Plaintiff submitted his County Jail Sick Call, and it was received and responded to by Nurse Cromell the same day. *Id*. It also noted that she examined the plaintiff that day. *Id*. On the Dental Progress Note, also dated the same day, Nurse Cromell wrote that the general condition of the plaintiff's teeth was "very poor". *Id*. She referred the plaintiff to Dr. Schamber, not a named party to this case, who evaluated the plaintiff and prescribed him Tylenol. *Id*. There is nothing further in the Complaint regarding Nurse Cromell.

Plaintiff testified that he cannot identify Nurse Cromell (Knott Decl. ¶ 4, Ex. B, Pl.'s Depo. 122:17-25, 123:1-3) or which nurse provided treatment to him on particular dates. (*Id*. at 123:17-

9

23). He also does not dispute that medical did not receive his Sick Call until September 24, 2018. (*Id*. at 130:19-21). He has no evidence that his October 19 appointment could have been made on September 24, when he was first seen by a nurse. (*Id*. at 134:11-19). He disputes the appointment was made on September 24 because no one told him about it (*Id*. at 135:24-25, 136:1-8), although he also was aware of Jail policy that inmates are not told the date of their outside medical appointment in advance. (*Id*. at 133:24-25, 134:1-8).

Other than broad generalizations that the "Defendants" breached an owed duty, the plaintiff has shown nothing that would allow a reasonable jury to conclude Nurse Cromell breached any duty she owed to the plaintiff. He has no personal knowledge of who Nurse Cromell is or what treatment she provided to him. Nurse Cromell promptly responded to plaintiff's Sick Call, examined his teeth, and referred him to the on-call physician for further examination. There is no evidence of any possible negligent acts or omissions on Nurse Cromell's behalf.

### B. The Negligence Claim Against ACH Fails

"To state a claim for negligent training or supervising in Wisconsin, [a plaintiff] must show (1) that the defendants had a duty of care; (2) that the defendants breached that duty; (3) that the acts or omissions of defendants' subordinates were a cause of [the plaintiff's] injury; and (4) that the acts or omissions of the defendants were a cause of the wrongful acts of their subordinates." *Garner v. Foster*, Case No. 18-cv-522-jdp, 2018 U.S. Dist. LEXIS 211358, at *9-10 (W.D. Wis. 2018) (Peterson, J.). For claims of negligent training or supervision,

> the causal question is whether the failure of the employer to exercise due care was a cause-in-fact of the wrongful act of the employee that in turn caused the plaintiff's injury. In other words, there must be a nexus between the negligent hiring, training, or supervision and the act of the employee. This requires two questions with respect to causation. The first is whether the wrongful act of the employee was a cause-in-fact of the plaintiff's injury. The second question is whether the negligence of the employer was a cause-in-fact of the wrongful act of the employee.

10

*Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 262, 580 N.W.2d 233 (1998) (emphasis added).

As such, the plaintiff must first prove Nurse Cromell was the cause of his claimed injuries. As stated, plaintiff has not retained any expert to opine regarding standard of care or causation. Because the plaintiff cannot prove Nurse Cromell's negligence, he cannot then prove the negligence of ACH was the cause of her negligent act.

### III.  PLAINTIFF CANNOT PROVE A *MONELL* CLAIM

A municipality can be held liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict the injury." *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). For purposes of § 1983, a private corporation like ACH acting under color of state law is treated as a municipal entity. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n. 6 (7th Cir. 2002). To state a *Monell* claim against ACH, the plaintiff must plead factual content that would allow the Court to draw the reasonable inference that (1) plaintiff has suffered the deprivation of a constitutional right; and (2) that an official custom or policy of the relevant entity caused that deprivation. *Monell*, 436 U.S. at 694-95.

> The Seventh Circuit recognizes three general categories of municipal conduct that can constitute a 'policy' for *Monell* purposes: (1) an express policy, statement, or ordinance or regulation that, when enforced, causes a constitutional deprivation; (2) an unconstitutional practice so permanent and well-settled as to constitute a 'custom or usage' with the force of law; and (3) the decision of a municipal policymaker with final policymaking authority in the area at issue.

*Estate of Jawson v. Milwaukee Cty.*, Case No. 19-C-1008, 2020 U.S. Dist. LEXIS 150047, *16-17 (E.D. Wis. August 19, 2020).

Plaintiff claims "Defendants" "knew, based upon numerous complaints by inmates of the Jail, that [it] failed or refused to provide adequate medical care to inmates of the Jail" amounting

11

to deliberate indifference. (ECF No. 1 ¶¶ 76-81). However, he makes no factual claims related to ACH's alleged negligence. The only factual allegation regarding ACH is that "[t]he County Defendants were negligent in their failure to supervise Advanced Correctional for the failure to provide appropriate dental treatment to Clubb". (ECF No. 1 ¶ 37). He alleges that only the County Defendants had "a defacto [sic] policy of not providing adequate medical care to inmates, and more specifically, ha[d] a defacto [sic] policy of refusing to provide outside medical care to its inmates." (ECF No. 1 ¶ 40). He contradicted his Complaint and testified he only generally discussed with his cellmates that inmates were not getting adequate dental treatment, not that his cellmates had filed medical requests and failed to receive treatment. (Knott Decl. ¶ 4, Ex. B, Pl.'s Depo. 115:18-24, 116:2-6). There is no allegation that ACH had any policy, explicit or implicit, unconstitutional practice, or decision of a final policymaker that caused the deprivation of plaintiff's rights.

### A. Plaintiff Has Not Identified an Express Policy that Caused the Alleged Deprivation of Rights

Plaintiff must establish that the policy in question was the "moving force" behind (i.e., the proximate cause of) the constitutional tort. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The challenged governmental practice "must be closely related to the ultimate injury." Id. at 391; *Estate of Sims v. Cty. of Barbeau*, 506 F.3d 509, 515 (7th Cir. 2009) ("direct causal link" between a custom and the alleged constitutional violations required). A "moving force" is the "catalyst" for the alleged injury, not merely a "contributing factor." *Johnson v. Cook Cnty.*, 526 F. App'x 692, 696 (7th Cir. 2013); *Thomas v. Cook Cnty. Sheriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010).

At no point has the plaintiff claimed ACH had an express policy that caused his alleged deprivation of rights.

### B. Plaintiff Has Not Established an Unconstitutional "Custom or Usage"

12

Plaintiff falls considerably short of meeting his burden of establishing that ACH trained Nurse Cromell or other employees to engage in unconstitutional conduct.

> The word "policy" generally implies a course of action consciously chosen from among various alternatives; it is therefore difficult in one sense to even accept the submission that someone pursues a "policy" of "inadequate training," unless evidence be adduced which proves that the inadequacies resulted from conscious behavior – that is, proof that the policymakers deliberately chose a training program which would prove inadequate.

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). He has neither pled sufficient facts to state a claim, nor can he introduce evidence demonstrating the required pervasiveness and acquiescence in any alleged policy, custom, or practice.

To prove a "custom or usage" is so widespread that it is de facto policy, plaintiff also "must show more than the deficiencies specific to his own experience, of course." *Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016). A "pattern of prior similar instances" is necessary to establish the government culpability in failing to adequately train. *See Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995) (the "usual way in which an unconstitutional policy is inferred, in the absence of direct evidence, is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers.").

To support his *Monell* claim, plaintiff must plead facts and "introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2008). Plaintiff claims ACH knew or should have known of its alleged conduct "based upon numerous complaints by inmates of the Jail" (ECF No. 1 ¶¶ 77-78) and "repeated complaints and demands". (ECF No. 1 ¶ 81). He does not identify any policy nor a pattern of

13

policy. He testified he only generally discussed with his cellmates that inmates were not getting adequate dental treatment, not that his cellmates had filed medical requests and failed to receive treatment. (Knott Decl. ¶ 4, Ex. B, Pl.'s Depo. 115:18-24, 116:2-6). Any evidence of a pattern of practice is speculation and hearsay.

### C. Plaintiff Has Not Established ACH Has Final Policymaking Power

Whether an entity has final policymaking authority is a question of state or local law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989). Not every municipal official with discretion is a final policymaker; authority to make final policy requires more than mere discretion to act. *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001). Whether a public official has final policymaking authority often turns on if his or her decisions are subject to review by a higher official or other authority. *Id*. at 469 ("[T]he cases limit municipal liability under section 1983 to situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final in the special sense that there is no higher authority.").

This matter is similar to *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658 (7th Cir. 2016). Defendant Dr. David was the medical director at Shawnee Correctional Center, which contracted with defendant Wexford to provide medical services for inmates. *Id*. at 660. The plaintiff inmate began to complain of pain in his jaw, ear, and groin. *Id*. Nurses treated his pain with antibiotics and Tylenol, but his pain developed. Id. He then had an examination performed by Dr. David. *Id*. Dr. David observed the plaintiff had swollen lymph nodes and a mass in his jaw. Id. He submitted a biopsy request to Wexford, which was denied (by a committee of Dr. David and one other physician). *Id*. The committee decided to treat the plaintiff with two different antibiotics and proceed with the biopsy if plaintiff's symptoms continued. *Id*. At first the plaintiff's

14

condition improved, but soon after he reported increased pain and symptoms. *Id*. at 660-61. Dr. David resubmitted the biopsy request, which was approved. *Id*. at 661. The biopsy showed plaintiff had a rare type of non-Hodgkin's lymphoma. *Id*. Dr. David referred plaintiff to an outside oncologist where he received treatment including chemotherapy. *Id*. After his release, the plaintiff filed claims against Dr. David and Wexford alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *Id*.

The Seventh Circuit held "Dr. David did not have final policymaking authority in the relevant sense. He may have had the final say on [plaintiff's] treatment plan and thus was a final decisionmaker with respect to care, but that's not nearly enough to show he was a final policymaker." *Id*. at 664. He used his professional discretion when choosing a course of treatment for the plaintiff. The Court also held the *Monell* claim against Wexford based solely on Dr. David's alleged acts or omissions must be dismissed because "negating individual liability will automatically preclude a finding of *Monell* liability." *Id*.

Further, in *Gernetzke*, the Seventh Circuit was faced with the question of whether the principal of the plaintiff's school had final policymaking authority. *See generally Gernetzke*, 274 F.3d 464. Holding that the principal did not have such authority, the Seventh Circuit explained how, like ACH and Nurse Cromell, a principal has "final" authority in the ordinary sense of the word, the principal's policymaking authority was not "final" for purposes of § 1983.

"The final decisionmaking [sic] authority of the school district is lodged in the district's school board, but the board has promulgated regulations that delegate the administration of the five high schools in the school district to the principal of each school." *Id*. at 468. Analogous here, the final decision-making authority is vested in the County and Sheriff's Office. They, in turn, delegate the administration of medical treatment in the Jail to ACH and its nurses and physicians.

The Court continued explaining the principals, like ACH and Nurse Cromell, could not be final decision-makers because if they were "it would collapse direct and derivative liability. Every public employee, including the policeman on the beat and the teacher in the public school, exercises authority ultimately delegated to him or her by their public employer's supreme governing organs." *Id*. at 469.

Like in *Whiting*, although Jail doctors and nurses may make "final" decisions, that is not equivalent to the authority of a final decision-maker:

> A police officer has authority to arrest, and that authority is "final" in the practical sense that he doesn't have to consult anyone before making an arrest; likewise a teacher does not have to consult anyone before flunking a student. That is a perfectly good use of the word "final" in ordinary conversation but it does not fit the cases; for if a police department or a school district were liable for employees' actions that it authorized but did not direct, we would be back in the world of respondeat superior. To avoid this the cases limit municipal liability under section 1983 to situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final in the special sense that there is no higher authority.

*Id*.

"Delegation is not direction; authorization is not command; permission does not constitute the permittee the final policymaking authority." *Id*. "Only the delegation ('conferral' would be a better term) of final authority makes the 'delegate' the final authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126-27 (1988). As in *Whiting*, Nurse Cromell may have had the final say on plaintiff's treatment in which she was authorized to perform, but she did not have final policymaking authority. Like the legislature in *Gernetzke* vesting authority in the school board and not the individual principal, it has vested authority in the County and Sheriff on how to run the Jail. See § Wis. Stat. 302.38(1) ("If a prisoner needs medical or hospital care or is intoxicated or incapacitated by alcohol or another drug the sheriff, superintendent or other keeper of the jail or house of correction shall provide appropriate care or treatment and may transfer the prisoner to a

hospital or to an approved treatment facility"). ACH and Nurse Cromell have final decision-making authority in the sense that they do not have to consult the County or Sheriff before making medical decisions, but do not have final decision-making power under the purview of § 1983. Plaintiff has presented no evidence that would designate ACH or Nurse Cromell final decision-makers.

## CONCLUSION

Plaintiff has not taken any steps to prove his claims. Discovery has long ended, and he does not have the expert or lay testimony, or tangible evidence to prove any of his claims against ACH and Nurse Cromell. All the plaintiff's claims should be dismissed with prejudice and on the merits, costs and fees, and any other relief the Court deems just.

Dated this 31st day of May 2022

**LEIB KNOTT GAYNOR LLC**

By: /s/ Douglas S. Knott
Douglas S. Knott, SBN 1001600
Attorneys for Defendants Advanced Correctional Healthcare, Inc. and Ashley Cromell
219 N. Milwaukee Street, Suite 710
Milwaukee, WI 53202
Telephone: (414) 276-2102
Fax (414) 276-2140
Email  dknott@lkglaw.net